**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EUGENE MANNACIO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff<br><br>v.<br><br>DISCOVER FINANCIAL SERVICES, ROGER C. HOCHSCHILD, JOHN T. GREENE, and R. MARK GRAF,<br><br>Defendants. | Case No.  1:23-cv-06788<br><br>CLASS ACTION<br><br>Hon. Charles P. Kocoras |

**MEMORANDUM OF LAW IN SUPPORT OF THE NYC FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL**

Class members the New York City Employees' Retirement System, New York City Police Pension Fund, New York City Fire Department Pension Fund, and Teachers' Retirement System of the City of New York (collectively, the "NYC Funds") respectfully submit this memorandum in support of their motion (1) to be appointed as Lead Plaintiff pursuant to Section 21D (a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (2) for approval of their selection of Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser") as Lead Counsel and Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein") as Liaison Counsel for the proposed class.

## I.     **PRELIMINARY STATEMENT**

This is a securities class action brought on behalf of investors who purchased or otherwise acquired the common stock of Discover Financial Services ("Discover," "DFS," or the "Company") between February 21, 2019 and August 14, 2023, inclusive (the "Class Period"). The action is brought against Discover; Roger C. Hochschild, Discover's Chief Executive Officer, President, and a member of the Company's Board of Directors; John T. Greene, Discover's Chief Financial Officer and Executive Vice President ("EVP") since September 2019; and R. Mark Graf, Discover's CFO and EVP at all relevant times until September 2019 (collectively, "Defendants").  Plaintiff alleges violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), as well as Rule 10b-5 promulgated by the U.S. Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240 10b-5.

The PSLRA provides that the Court should appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the litigation and satisfies the relevant requirements of Federal Rule of Civil Procedure 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The NYC Funds are the appropriate choice for Lead Plaintiff because (1) they suffered losses of $10,626,445.36 on their investments in Discover common stock during the Class Period and, to the best of their knowledge, have the largest financial interest in the relief sought by the proposed class; and (2) they satisfy the typicality and adequacy requirements of Rule 23(a)(3) and (a)(4).  Accordingly, the Court should appoint the NYC Funds as Lead Plaintiff.

The Court should also approve the NYC Funds' selection of Lieff Cabraser as Lead Counsel and Cohen Milstein as Liaison Counsel for the proposed class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Lieff Cabraser has extensive experience in representing investors in securities class actions as well as other securities and financial fraud litigation, and has recovered billions of dollars on behalf of investors.  Cohen Milstein also has significant experience and a highly

successful track record in securities and other complex litigation.  The NYC Funds' motion should be granted.

## II.     SUMMARY OF FACTUAL ALLEGATIONS

Discover Financial Services, a Delaware corporation with headquarters in Riverwoods, Illinois, is a financial services company that owns and operates Discover Bank.  The Company, along with its subsidiaries, provides digital banking products and services as well as payment services.  Discover's digital banking segment includes Discover-branded credit cards issued to individuals on the Discover Network and other consumer banking products and services, including private student loans, personal loans, home loans, and deposit products.

The pending putative class case is brought under Sections 10(b) and 20(a) of the Exchange Act, as well as SEC Rule 10b-5, against Discover, as well as Roger Hochschild, who served as Discover's Chief Executive Officer and President during the Class Period; John Greene, who served as Discover's Chief Financial Officer and Executive Vice President ("EVP") from September 2019 through the remainder of the Class Period; and R. Mark Graf, who served as Discover's CFO and EVP from the beginning of the Class Period until September 2019 (collectively, "Defendants").  Plaintiffs allege Discover employed substandard risk management and compliance procedures, and as a result, improperly serviced student loans, incorrectly categorized credit card accounts and surcharged customers, and lost control of its rising credit card delinquency rate.

Defendants concealed these improper practices through numerous representations emphasizing the Company's purportedly strong risk management and compliance procedures. For example, in its February 21, 2019 Form 10-K for the year ending December 31, 2018, Discover represented:

- The Company had a strong "enterprise-wide risk management framework to identify, measure, monitor, manage and report risks that affect or could affect the achievement of our strategic, financial and other objectives."

- Its risk management framework "is designed to be comprehensive with respect to our business units and their control and support functions, and across all risk types"; and "[w]e structure accountability across three lines of defense along the principles of risk management execution, oversight and independent validation."

- The Company's CEO is "ultimately responsible for risk management within our Company," and "establishes a risk management culture throughout the Company and ensures that businesses operate in accordance with this risk culture."

- The Company's risk management framework was able "to identify, measure, manage, monitor and report" multiple categories of risk, "including credit risk, market risk, liquidity risk, operational risk, compliance and legal risk and strategic risk."

- With respect to credit risk management, a "critical" component of the Company's management and growth strategy: "Credit Risk Management is responsible for (i) developing, validating and implementing credit policy criteria and predictive loan origination and servicing models in order to optimize the profitability of Company lending activities, (ii) ensuring adherence to our credit risk policies and approval limits, and that departmental policies, procedures, and internal controls are consistent with the standards defined by the Company, (iii) ensuring that we manage credit risk within approved limits, and (iv) monitoring performance for both new and existing consumer loan products and portfolios."

Discover made substantially similar representations in other SEC filings during the Class Period.

The truth began to emerge on July 20, 2022, when Discover disclosed an internal investigation into its "student loan servicing practices and related compliance matters." The Company also suspended its share buyback program pending the results of the internal investigation. This was not the first time Discover's improper activity with respect to its student loan servicing came to light: in 2015, the Consumer Financial Protection Bureau ("CFPB") issued a consent order and imposed $18.5 million in restitution and penalties related to Discover's "illegal private student loan servicing practices,"[1] and in 2020 the CFPB ordered

---

[1] https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-discover-bank-to-pay-18-5-million-for-illegal-student-loan-servicing-practices/.

Discover to pay $10 million in consumer redress and a $25 million civil penalty for failure to comply with the 2015 consent order.[2]

On July 19, 2023, Discover disclosed that it had been overcharging merchant fees for certain credit card accounts since 2007. The attendant adjustment resulted in a cumulative decrease of $235 million in beginning retained earnings as of April 1, 2023, and a reduction in quarterly income of $8 million. The Company announced an internal investigation into this issue and again suspended its share buyback program "while the internal review of compliance, risk management and corporate governance is pending." In that same press release, the Company announced it had received a proposed consent order from the Federal Deposit Insurance Corporation in connection with a consumer compliance issue.

On August 14, 2023, Discover disclosed that its credit card delinquency rate increased to 3.00% for the 24-month period ended July 31, 2023. The pre-pandemic rate in July 2019, by contrast, was 2.37%. Also that day, the Company announced Hochschild was stepping down as CEO and President effective immediately. In announcing his resignation, the Board said it was "continuously focused on Discover reaching its full potential across the business, including our commitment to enhancing compliance, risk management and corporate governance." On August 15, 2023, the website *Seeking Alpha* reported on financial analysts' belief that Hochschild's resignation was directly connected to Discover's recently disclosed compliance issues.[3]

---

[2] https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-settles-with-student-loan-servicers-discover-bank-the-student-loan-corporation-and-discover-products-inc-for-violating-a-bureau-consent-order-and-other-unlawful-practices/.

[3] https://seekingalpha.com/news/4003107-discover-financial-stock-sinks-on-sudden-ceo-exit-amid-regulatory-concerns.

The price of Discover shares declined substantially, on extraordinary trading volume, following each of the above disclosures.  Those disclosures collectively resulted in an approximately ***$4.1 billion*** reduction in Discover's market capitalization.

## III.     ARGUMENT

### A.     The NYC Funds Should Be Appointed Lead Plaintiff

The PSLRA sets forth a two-step procedure that governs the appointment of a lead plaintiff in a private proposed class action arising under the Exchange Act.  15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B)(i).

*First*, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class can apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§ 78u-4(a)(3)(A) and (B).

*Second*, the PSLRA provides that within 90 days after publication of the notice, the court must appoint as lead plaintiff the member or members of the class that the court determines are most capable of adequately representing the interests of class members.  15 U.S.C. § 78u-4(a)(3)(B).  The PSLRA establishes a "presumption" that "the most adequate plaintiff" consists of "the person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). The NYC Funds satisfy each of those prerequisites.

### 1.    The NYC Funds timely moved for appointment as Lead Plaintiff.

Plaintiff in the first-filed action published a notice on September 1, 2023 on *Globe Newswire*. *See* Decl. of Carol V. Gilden ("Gilden Decl.") Ex. A (notice). The notice advised that all class members who are interested in moving for the appointment of Lead Plaintiff must do so by October 31, 2023. Courts have recognized national news wire services as suitable vehicles for meeting the PSLRA's requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See, e.g.*, *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62, 64 (D. Mass. 1996). And the NYC Funds' motion, filed on October 31, 2023, is timely.

### 2.    The NYC Funds have the largest financial interest in the action.

As noted above, the PSLRA establishes a rebuttable presumption that "the most adequate plaintiff" is the "person" or "group of persons" that "has the largest financial interest in the relief sought by the class," and satisfies Rule 23's requirements. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also City of Sterling Heights Gen. Empls. Ret. Sys. v. Hospira, Inc.*, 2012 WL 1339678, at *3 (N.D. Ill. Apr. 18, 2012). This presumption can only be rebutted by proof that the person or group with the largest financial interest "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

The NYC Funds have the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the Cass Period; (2) the number of net shares purchased during the Class Period; (3) the total net funds expended during the Class Period; and (4) the approximate losses suffered. 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997); *see also*

*Hospira*, 2012 WL 1339678, at *3 (citing *Lax*). "Courts in this District frequently consider the approximate losses suffered to be the most important of the four factors." *Colwell v. Exicure Inc.*, 2023 WL 2572454, at *3 (N.D. Ill. Mar. 20, 2023).

During the Class Period, the NYC Funds (1) purchased a total of 587,797 shares of Discover common stock; (2) purchased a net amount of 39,131 shares of Discover common stock; (3) expended a net amount of $16,149,539.15 on their purchases of Discover common stock; and (4) suffered a loss of $10,626,445.36 on a Last-In-First-Out ("LIFO") basis—the methodology typically applied in this District[4]—as a result of the disclosure of the fraud. *See* Gilden Decl. Exs. B and C (attaching the NYC Funds' certifications and chart analyzing their losses). Even accounting for limitations articulated in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005)—i.e., excluding losses based on sales occurring before the first alleged corrective disclosure—the NYC Funds suffered losses of $9,961,742.70. To the best of their knowledge, the NYC Funds possess the largest financial interest in the outcome of this litigation and are therefore presumptively "the most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. The NYC Funds satisfy Rule 23's typicality and adequacy requirements.

In addition to satisfying the PSLRA's prerequisites, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(cc). This inquiry should, however, be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy. *See Colwell*, 2023 WL 2572454, at *2; *Takara Tr. v. Molex Inc.*, 229 F.R.D. 577, 580 (N.D. Ill. 2005); *In re*

---

[4] *See, e.g.*, *Hospira*, 2012 WL 1339678, at *5 ("courts in this District and others have preferred LIFO over FIFO as the appropriate method to calculate losses for purposes of appointment [of] a lead plaintiff in a securities fraud case").

*Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). The NYC Funds readily meet this threshold.

The NYC Funds' claims are typical of those of other class members. Rule 23(a)(3)'s typicality requirement is satisfied when the putative lead plaintiff's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *9 (N.D. Ill. Oct. 8, 2019) (quoting *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998)); *see also Hospira*, 2012 WL 1339678, at *8; *Takara Tr.*, 229 F.R.D. at 580 (finding putative lead plaintiff's claims typical because, like other class members, it "claim[ed] it sustained losses from [defendant's] misrepresentations and inflations of stock value, and these claims arise under the same theory that [defendant's] course of conduct violated federal securities laws").

The NYC Funds, like all other class members, purchased Discover common stock during the Class Period at prices that were artificially inflated by Defendants' wrongful conduct, and suffered damages when facts concealed by Defendants' misrepresentations ultimately were revealed. The NYC Funds' claims are therefore typical of the claims of other class members, as they all arise out of the same course of events and are based on the same legal theories.

The NYC Funds will fairly and adequately represent the interests of the class. Rule 23(a)(4) requires that a representative party also demonstrate it will "fairly and adequately protect the interests of the class." A representative party is "adequate" if "(1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who [will] be able to prosecute the litigation vigorously." *Hospira*, 2012 WL 1339678,

- 9 -

at *8 (citation omitted).  The NYC Funds have made a sufficient showing that they are adequate under Rule 23.

*First*, the NYC Funds' interests do not conflict with those of other class members. Indeed, these respective interests are closely aligned because each class member allegedly purchased Discover common stock in reliance on Defendants' misstatements or omissions.  *See, e.g.*, *Colwell*, 2023 WL 2572454, at *2.  There is also no evidence that the NYC Funds' action is collusive.

*Second*, as detailed above, the NYC Funds have a significant interest in the outcome of this case.  Having suffered approximately $10.626 million in losses due to Defendants' misconduct, the NYC Funds are strongly motivated to pursue these claims vigorously on behalf of themselves and other defrauded investors.

Further, the NYC Funds have extensive experience leading securities class actions, and have proven they are precisely the type of institutional investor the PSLRA contemplates serving as lead plaintiff.  Among other things, the NYC Funds achieved a $169.5 million settlement in *In re Juniper Networks, lnc. Securities Litigation*, No. 3:06-cv-4327-MJJ (N.D. Cal.); a $624 million settlement in *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal.); and a $75 million settlement in *In re Wachovia Equity Securities Litigation*, No. 08-cv-6161 (S.D.N.Y.).[5]  The NYC Funds also served as co-lead plaintiff in shareholder derivative litigation against Wynn Resorts' officers and directors, resulting in a settlement consisting of $41

---

[5] The NYC Funds have served as lead plaintiff or class representative in at least four other securities class actions.  *See In re Am. Realty Cap. Props., Inc. Litig.*, No. 1:15-mc-00040-AKH (S.D.N.Y. Jan. 22, 2020), ECF No. 1309 ($1.025 billion settlement fund); *Norfolk Cnty. Ret. Sys. v. Cmty. Health, Inc.*, No. 3:11-cv-00433 (M.D. Tenn. Jan. 30, 2020), ECF No. 429 ($53 million settlement fund); *In re Take-Two Sec. Litig.*, 2010 WL 11613684, at *3 (S.D.N.Y. June 29, 2010) ($20,115,000 settlement fund); *In re Apple Inc. Sec. Litig.*, 2011 WL 1877988, at *1 (N.D. Cal. May 17, 2011) ($16.5 million settlement fund).

million and extensive corporate governance reforms, including significant changes to the company's regulatory compliance and sexual misconduct policies and procedures. *See Thomas P. DiNapoli v. Stephen A. Wynn*, No. A-18-770013-B (Nev. Dist. Ct.).

Indeed, courts have recognized the NYC Funds' efforts in serving as lead plaintiff or co-lead plaintiff in securities class actions. At the final settlement hearing in the *Countrywide* litigation, for example, the court praised the NYC Funds, together with a New York State pension fund serving as co-lead plaintiff in the litigation, stating they "are obviously sophisticated, and they have a large stake in the outcome. . . . And the Court has confidence in their ability to protect the interests of the class." *Countrywide*, No. 07- cv-5295 (C.D. Cal. Mar. 9, 2011), ECF No. 1060 at 65-66.

*Third*, as further demonstrated below, the law firms the NYC Funds have selected as proposed Lead Counsel (Lieff Cabraser) and proposed Liaison Counsel (Cohen Milstein) are highly qualified and prepared to vigorously prosecute the litigation on behalf of the class.

The NYC Funds have therefore made the requisite *prima facie* showing that they will fairly and adequately represent the interests of the class.

## B.    The NYC Funds' Selection of Lead Counsel and Liaison Counsel Should Be Approved

The PSLRA directs that once a court designates a lead plaintiff, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The lead plaintiff's selection of lead counsel should not be disturbed unless doing so is necessary to protect the interests of the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *Cavanaugh*, 306 F.3d at 732, n.11 ("Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the class.").

The NYC Funds have selected Lieff Cabraser to serve as Lead Counsel and Cohen Milstein as Liaison Counsel. As detailed in its firm résumé (*see* Gilden Decl. Ex. D), Lieff Cabraser is one of the nation's premier plaintiffs' law firms, and has successfully prosecuted scores of securities and financial fraud lawsuits on behalf of public and private institutional investors and other investors. For example, Lieff Cabraser served as co-lead counsel in *In re Wells Fargo & Company Shareholder Derivative Litigation*, No. 3:16-cv-05541 (N.D. Cal.), in which plaintiffs alleged Wells Fargo's officers and directors knew or consciously disregarded that bank employees illicitly created millions of customer accounts without those customers' knowledge or consent. In 2020, the court granted final approval to a $240 million settlement of the litigation. Lieff Cabraser also served on the Plaintiffs' Executive Committee and as co-lead class counsel in landmark litigation against BNY Mellon and its predecessors and subsidiaries, alleging defendants deceptively overcharged custodial customers on foreign currency exchanges in connection with the purchase or sale of foreign securities. *See In re Bank of N.Y. Mellon Corp. Foreign Exchange Transactions Litig.*, No. MD-12-2335-LAK (S.D.N.Y.). In 2015, Lieff Cabraser and others achieved a global resolution of the private and governmental enforcement actions against BNY Mellon, in which $504 million was paid back to BNY Mellon customers ($335 million of which is directly attributable to the class litigation).

Further, Lieff Cabraser is one of few plaintiffs' firms with experience trying federal securities class cases. In *Claghorn v. Edsaco*, No. 98-3039-SI (N.D. Cal.), Lieff Cabraser obtained a $170.7 million jury verdict after a multi-week trial. Additionally, in *FPI/Agretech Securities Litigation*, MDL No. 763 (D. Haw.), Lieff Cabraser recovered tens of millions of dollars in class settlements and a $25 million jury verdict at trial against a non-settling defendant. Lieff Cabraser also has significant experience serving as lead counsel in other federal securities

- 12 -

class action litigation. *See, e.g.*, *In re BofI Holding, Inc. Sec. Litig.*, No. 3:15-cv-02324-GPC-KSC (S.D. Cal.); *In re A-Power Energy Generation Sys., Ltd. Sec. Litig.*, No. 2:11-ml-2302-GW-(CWx) (C.D. Cal.); *In re Brooks Automation, Inc. Sec. Litig.*, No. 06-11068-RWZ (D. Mass.).

Finally, as demonstrated in its firm résumé (*see* Gilden Decl. Ex, E), Cohen Milstein—with an office in Chicago—is well qualified to serve as Liaison Counsel. The firm has over 100 lawyers, with a deep bench of talent and the financial resources to assist in this matter. *Chambers USA* and *Legal 500* have consistently recognized Cohen Milstein as a "Top Tier Firm" and "Leading Firm" in Securities Litigation, Antitrust and Product Liability, Mass Torts. Additionally, in 2023 Cohen Milstein's securities practice group was recognized by *Law360* as a 2022 Practice Group of the Year. Carol Gilden, who serves as the Resident Partner of Cohen Milstein's Chicago office and leads the Cohen Milstein team participating in this case, is an accomplished litigator with decades of experience in the Northern District of Illinois and a broad-based national practice.

## CONCLUSION

The NYC Funds respectfully request that the Court (1) appoint them as Lead Plaintiff for the class; and (2) approve their selection of Lead Counsel and Liaison Counsel for the class.

Dated: October 31, 2023          Respectfully submitted,

 */s/ Carol V. Gilden*
Carol V. Gilden
COHEN MILSTEIN SELLERS
    & TOLL, PLLC
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
IL Bar: 6185530
Tel: 312-357-0370
cgilden@cohenmilstein.com

*Proposed Liaison Counsel for the Class*

LIEFF CABRASER HEIMANN
   & BERNSTEIN, LLP
Steven E. Fineman (*pro hac vice forthcoming*)
Daniel P. Chiplock (*pro hac vice forthcoming*)
Michael J. Miarmi (*pro hac vice forthcoming*)
Sharon M. Lee (*pro hac vice forthcoming*)
Gabriel Panek (*pro hac vice forthcoming*)
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF CABRASER HEIMANN
   & BERNSTEIN, LLP
Richard M. Heimann (*pro hac vice forthcoming*)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Counsel for the NYC Funds and Proposed
Lead Counsel for the Class*