## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KBC ASSET MANAGEMENT N.V., NEW
YORK CITY EMPLOYEES' RETIREMENT
SYSTEM, NEW YORK CITY FIRE
DEPARTMENT PENSION FUND, NEW
YORK CITY POLICE PENSION FUND, and
TEACHERS' RETIREMENT SYSTEM OF
THE CITY OF NEW YORK, Individually and
on Behalf of All Others Similarly Situated,

        Plaintiffs,

        v.

DISCOVER FINANCIAL SERVICES,[*]
ROGER C. HOCHSCHILD, JOHN T.
GREENE, R. MARK GRAF, MARY K.
BUSH, CANDACE H. DUNCAN, JOSEPH F.
EAZOR, CYNTHIA GLASSMAN, THOMAS
G. MAHERAS, MICHAEL MOSKOW,
DANIELA O'LEARY GILL, JOHN B.
OWEN, DAVID L. RAWLINSON II, and
JENNIFER L. WONG,

        Defendants.

Case No. 1:23-cv-06788

Hon. Martha M. Pacold

## DEFENDANTS' OPPOSITION TO PLAINTIFFS'
## MOTION FOR LEAVE TO AMEND

---

[*] Capital One Financial Corp. is the successor by merger to Discover Financial Services. *See* Dkt. No. 109.

**TABLE OF CONTENTS**

*Page(s)*

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..........................................................................................................................4

      A.      The Court's Dismissal of Plaintiffs' Amended Complaint....................................4

      B.      Plaintiffs' Proposed Second Amended Complaint .................................................5

            1.      Two Recent Developments Precipitating the PSAC...................................5

            2.      Plaintiffs' Amended Allegations................................................................8

ARGUMENT .................................................................................................................................9

I.      THE PSAC IS FUTILE BECAUSE IT STILL FAILS TO PLEAD WITH
PARTICULARITY A CLAIM FOR SECURITIES FRAUD. ...........................................9

      A.      Plaintiffs Fail to Plead with Particularity a Claim Based on Any New
Challenged Statements.........................................................................................9

            1.      Plaintiffs Fail to Plead Loss Causation and Scienter for the Newly
Challenged Statements Related to the Restated Financials. ........................9

                  a.      Loss Causation ...............................................................................10

                  b.      Scienter ..........................................................................................11

            2.      Plaintiffs Fail to Plead with Particularity that the Transaction Fee
Statement Was False or Misleading or Made with Scienter. .....................15

      B.      Plaintiffs' Attempts to Challenge Previously-Dismissed Statements Still
Fail. ...................................................................................................................16

            1.      Plaintiffs Still Fail to Plead any False or Misleading Statements or
Scienter Based on Compliance and Risk Management Statements.............16

                  a.      None of the New Facts Should Change the Court's
Conclusion that the Compliance Statements Were Not
Concrete Assurances.....................................................................18

                  b.      Plaintiffs Fail to Plead with Particularity a Strong Inference
of Scienter for the Compliance and Risk Management
Statements.....................................................................................19

            2.      Plaintiffs Still Fail to Plead with Particularity a Claim Based on the
Previously-Dismissed SOX Certification Statements................................24

                  a.      Plaintiffs Still Fail to Plead with Particularity that the SOX
Certification Statements Were False or Misleading. ....................24

                  b.      Plaintiffs Fail to Plead with Particularity a Strong Inference
of Scienter as to Defendants' SOX Certifications. .......................27

II.      THE PSAC STILL FAILS TO PLEAD WITH PARTICULARITY A CLAIM
FOR SCHEME LIABILITY..........................................................................................28

III.     THE PSAC STILL FAILS TO PLEAD WITH PARTICULARITY A CLAIM
         FOR CONTROL PERSON LIABILITY..........................................................................29

CONCLUSION ...............................................................................................................................30

## TABLE OF AUTHORITIES

*Page(s)*

**CASES**

*In re Allscripts Inc. Sec. Litig.*,
2001 WL 743411 (N.D. Ill. June 29, 2001) .............................................................................14

*In re Am. Serv. Grp. Inc.*,
2009 WL 1348163 (M.D. Tenn. Mar. 31, 2009) ....................................................................23

*Anderson* v. *Spirit Aerosystems Holdings*,
827 F.3d 1229 (10th Cir. 2016) ............................................................................................25

*Antelis* v. *Freeman*,
799 F. Supp. 2d 854 (N.D. Ill. 2011) ...................................................................................20

*In re Bally Total Fitness Sec. Litig.*,
2006 WL 3714708 (N.D. Ill. July 12, 2006) ................................................................... 11-13

*In re Baxter Int'l Inc. Sec. Litig.*,
2021 WL 100457 (N.D. Ill. Jan. 12, 2021) ...........................................................................23

*Borusk* v. *Pierce*,
2023 WL 8764390 (W.D. Wisc. Dec. 19, 2023) ...................................................................30

*Buhrke Fam. Revocable Tr.* v. *U.S. Bancorp*,
726 F. Supp. 3d 315 (S.D.N.Y. 2024)..............................................................................15, 20

*In re CBOE Volatility Index Manip. Antitrust Litig.*,
435 F. Supp. 3d 845 (N.D. Ill. 2020) ............................................................................... 19-20

*Chow* v. *Archer-Daniels-Midland Co.*,
2025 WL 790854 (N.D. Ill. Mar. 12, 2025)..........................................................................13

*City of Brockton Ret. Sys.* v. *Shaw Grp. Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008)............................................................................... 11-12

*City of Monroe Empls.' Ret. Sys.* v. *Hartford Fin. Servs. Grp.*,
2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011)................................................................. 26-27

*Cornielsen* v. *Infinium Cap. Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019) ...........................................................................................15, 30

*Das* v. *Rio Tinto Plc.*,
332 F. Supp. 3d 786 (S.D.N.Y. 2018)....................................................................................22

*Davis* v. *SPSS, Inc.*,
385 F. Supp. 2d 697 (N.D. Ill. 2005) ....................................................................................11

*Desai* v. *Gen. Growth Props., Inc.*,
654 F. Supp. 2d 836 (N.D. Ill. 2009) ................................................................28, 30

*Elec. Workers Pension Fund* v. *HP Inc.*,
2021 WL 4199273 (N.D. Cal. Sept. 15, 2021) ........................................................22

*Fresno Cnty. Emps.' Ret. Ass'n* v. *comScore*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017)......................................................................23

*Fryman* v. *Atlas Fin. Holdings, Inc.*,
2022 WL 1136577 (N.D. Ill. Apr. 18, 2022) ...........................................................26

*In re Galena Biopharma Inc. Sec. Litig.*,
117 F. Supp. 3d 1145 (D. Or. 2015) .........................................................................30

*Heavy & Gen. Laborers' Loc. 472 & 172 Pension & Annuity Funds* v. *Fifth Third Bancorp*,
2022 WL 1642221 (N.D. Ill. May 24, 2022)...................................................20, 27

*Hedick* v. *Kraft Heinz Co.*,
2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) .....................................................25, 29

*In re Hertz Glob. Holdings Sec. Litig.*,
2017 WL 1536223 (D.N.J. Apr. 27, 2017) ...............................................................23

*Higginbotham* v. *Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) ....................................................................................27

*In re Inotiv, Inc. Sec. Litig.*,
2024 WL 1344784 (N.D. Ind. Mar. 29, 2024).........................................................22

*Int'l Union of Operating Eng'rs, Loc. 139, AFL-CIO* v. *Daley*,
983 F.3d 287 (7th Cir. 2020) ......................................................................................9

*Janbay* v. *Canadian Solar, Inc.*,
2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ................................................... 10-11

*In re JP Morgan Chase Sec. Litig.*,
363 F. Supp. 2d 595 (S.D.N.Y. 2005).......................................................................23

*Last Atlantis Cap. LLC* v. *AGS Specialist Partners*,
533 F. Supp. 2d 828 (N.D. Ill. 2008) ................................................................15, 21

*Lightfoot* v. *Union Carbide Corp.*,
1997 WL 752357 (S.D.N.Y. Dec. 2, 1997) ..............................................................17

*In re NeoPharm, Inc. Sec. Litig.*,
2007 WL 625533 (N.D. Ill. Feb. 23, 2007) ..............................................................19

*In re Ocwen Fin. Corp. Sec. Litig.*,
2015 WL 12780960 (S.D. Fla. Sept. 4, 2015) ........................................................................15

*Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015).................................................................................................................26

*Parrott* v. *Fam. Dollar, Inc.*,
2020 WL 1888927 (N.D. Ill. Apr. 16, 2020) ..........................................................................17

*Patten* v. *N. Tr. Co.*,
703 F. Supp. 2d 799 (N.D. Ill. 2010) ........................................................................................3

*Pension Tr. Fund for Operating Eng'rs* v. *Kohl's Corp.*,
266 F. Supp. 3d 1154 (E.D. Wis. 2017)...................................................................................14

*Pugh* v. *Trib. Co.*,
521 F.3d 686 (7th Cir. 2008) ...................................................................................................12

*Ray* v. *Citigroup Glob. Markets, Inc.*,
482 F.3d 991 (7th Cir. 2007) ...................................................................................................10

*Rehm* v. *Eagle Fin. Corp.*,
954 F. Supp. 1246 (N.D. Ill. 1997) ..........................................................................................20

*Roofer's Pension Fund* v. *Papa*,
2018 WL 3601229 (D.N.J. July 27, 2018).................................................................................27

*Roth* v. *OfficeMax, Inc.*,
527 F. Supp. 2d 791 (N.D. Ill. 2007) .................................................................................12, 22

*Scheiner* v. *Midas, Inc.*,
2013 WL 329006 (N.D. Ill. Jan. 29, 2013)........................................................................ 19-20

*In re Sipex Corp. Sec. Litig.*,
2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) .........................................................................23

*Smith* v. *Nat'l Health Care Servs. of Peoria*,
934 F.2d 95 (7th Cir. 1991) .....................................................................................................17

*In re SunEdison, Inc. Sec. Litig.*,
300 F. Supp. 3d 444 (S.D.N.Y. 2018).......................................................................................25

*Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007).................................................................................................................19

*Toft* v. *Harbor Diversified Inc.*,
2025 WL 357776 (E.D. Wis. Jan. 31, 2025)................................................................... 14, 27-28

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ........................................................................12

*Ward* v. *Soo Line R.R. Co.*,
  901 F.3d 868 (7th Cir. 2018) ...............................................................................3, 17

**STATUTES, RULES, AND REGULATIONS**

Federal Rule of Civil Procedure Rule 9(b) ...........................................................9, 15, 30

Federal Rule of Civil Procedure Rule 15(a)(2)..............................................................9

Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4 *et seq*................9, 11, 15

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ........................................................................5

**PRELIMINARY STATEMENT**

In March 2025, the Court dismissed Plaintiffs' claims, concluding that none of the 143 alleged misstatements—which discussed Discover's compliance program and risk management culture—were actionable under the securities laws, because they amounted to immaterial puffery, were not false, or were inactionable opinion or forward-looking statements. Dkt. No. 104 ("Op."). Alleged compliance shortcomings, including Discover's misclassification of certain credit card accounts, did not change this conclusion, because general and aspirational statements about Discover's compliance program did not amount to "predictions and assurances about Discover's level of compliance." *Id.* at 9.

Notwithstanding the Court's admonition that Plaintiffs should seek leave to amend only if they "believe they can do so consistent with this opinion and Rule 11," *id.* at 42, Plaintiffs now seek leave to file a Proposed Second Amended Complaint ("PSAC"), Dkt. No. 108-2, that challenges many of the same statements as in the dismissed Amended Complaint ("FAC"), Dkt. No. 74, and a handful of new ones. Although the PSAC contains some superficial edits and shifted text that create a lot of red ink in the 198-page redline, Dkt. No. 108-3, the new allegations largely boil down to two recent developments about the card misclassification issue: (1) Discover's December 2024 restatement of financial information for 2022 and 2023; and (2) Discover's entry into consent orders with the FDIC and Federal Reserve Board in April 2025, which do not save Plaintiffs' claims.

*First,* Plaintiffs fail to state a claim with respect to the two new categories of statements they challenge based on the recent developments: (i) statements about the restated financials themselves, and (ii) a definitional statement from Discover's 10-Ks about transaction fees.

As to the restatement, Plaintiffs fail to plead the essential elements of loss causation, *i.e.*, that the alleged misstatements caused economic injury to Plaintiffs, and scienter. The

restatement—which was announced in late 2024, months before the Court issued its opinion dismissing the FAC—addressed a disagreement with the SEC over the accounting treatment for the liability from credit card misclassifications. But Plaintiffs do not—and cannot—allege that the restatement was itself a "corrective disclosure" that caused a decline in Discover's stock price. Instead, Plaintiffs rely on the same alleged corrective disclosures in the FAC, all of which pre-date the restatement and are unrelated to the newly challenged financial statements. Additionally, mistakes in applying technical accounting rules are not enough to plead fraudulent intent. As Plaintiffs allege, Discover restated its financials and changed its accounting treatment only after the SEC accounting staff questioned Discover's accounting for the card misclassification refund liability, and there is no allegation that the SEC staff viewed the previous accounting as bad faith.

As to the newly challenged statement that, with regard to fees paid by merchants, "[c]ontractually defined per-transaction fee amounts typically apply to each type of transaction processed and are recognized as revenue at . . . settlement," PSAC ¶ 208, Plaintiffs fail to plead with particularity that the statement was misleading or made with scienter. Notwithstanding Discover's admission that it misclassified certain cards into an incorrect pricing tier, Plaintiffs do not dispute that Discover had contractually defined, per-transaction fees that it typically applied to merchants who accepted Discover cards or that it recognized revenue from those transactions at the time of settlement. Though Discover acknowledged that it *overcharged* merchants in certain instances when it applied those fees, that does not render the statement false. And Plaintiffs plead no facts supporting an inference of fraudulent intent for this statement.

*Second*, Plaintiffs' attempts to rehash challenges to two categories of alleged misstatements the Court already dismissed—(1) statements about Discover's compliance program, and (2) certifications made under the Sarbanes-Oxley Act ("SOX")—fall flat. As an initial matter,

Plaintiffs' inclusion of previously-dismissed challenged statements in the PSAC "to preserve their appellate rights," *id.* at 83 n.140, is improper and a basis to deny leave to amend here. The Court need not bear the "unnecessary and annoying burden" of slogging through allegations it already dismissed. *Ward* v. *Soo Line R.R. Co.*, 901 F.3d 868, 881 (7th Cir. 2018). Moreover, the Court already dismissed all claims in the first category because "no reasonable investor would interpret statements describing the purposes and goals of Discover's compliance program . . . to convey specific predictions and assurances about Discover's level of compliance," Op. at 9, and Plaintiffs concede that the PSAC includes no new allegations about many of the previously-dismissed statements, PSAC at 83 n.140. The handful of purported "additional facts" in the PSAC do not justify revisiting the Court's dismissal of claims based on the remaining compliance-related statements. In any case, Plaintiffs still fail to adequately plead scienter.

Similarly, the certifications and related statements made under SOX, all of which were previously dismissed by the Court, or are nearly identical to the dismissed statements, *see* Op. at 35-39, are inactionable statements of opinion, are not false, and Plaintiffs again fail to adequately plead scienter. Plaintiffs rely on the admission in Discover's amended 2023 10-K that "[m]anagement 'also concluded that the Company's disclosure controls and procedures were not effective . . . because of . . . material weaknesses.'" PSAC ¶ 212. But the amended 10-K makes clear that those conclusions were reached "*[s]ubsequent* to the original evaluation." Ex. 47 at 160 (emphasis added).[1] Plaintiffs therefore fail to plead particularized facts that the Officer Defendants

---

[1] Citations to Exs. 1 - 40 are to the March 27, 2024 Declaration of Christopher M. Viapiano; citations to Exs. 41 - 44 are to the June 3, 2024 Reply Declaration of Christopher M. Viapiano; citations to Exs. 45 - 67 are to the June 30, 2025 Declaration of Christopher M. Viapiano submitted herewith. As the Court recognized, it "may consider documents critical to the complaint and referred to in it, as well as information subject to proper judicial notice," Op. at 2, which includes "matters of public record, such as stock prices and SEC filings," *Patten* v. *N. Tr. Co.*, 703 F. Supp. 2d 799, 803 n.2 (N.D. Ill. 2010). "To the extent that an exhibit . . . referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence." Op. at 29 n.7 (quotation omitted).

believed, based on their knowledge and evaluation *at the time the certifications were signed*, that Discover's controls were not designed in a reasonable manner or were otherwise deficient.

*Finally*, Plaintiffs' attempt to transform their defective misrepresentation theory into a scheme liability claim, and to plead Section 20(a) control person claims against all the Individual Defendants, fails just as it did last time.

## BACKGROUND

### A.     The Court's Dismissal of Plaintiffs' Amended Complaint

This case was filed in September 2023, following Discover's July 2023 announcement that it had placed certain credit cards into an incorrect pricing tier. In February 2024, Plaintiffs filed the FAC, which swept in all statements by Defendants about compliance and risk during the previous five years. The FAC asserted claims for securities fraud, scheme liability, and control person liability, challenging 143 statements in Discover's annual and quarterly reports, "press releases, earnings calls, and industry conferences" that "emphasiz[ed] Discover's purportedly robust compliance measures." FAC ¶¶ 3-4. Plaintiffs attempted to tie that kitchen-sink list of compliance statements to five dates over that nearly-five-year period during which Discover's stock price decreased, which Plaintiffs alleged was the result of the "truth" coming to light.

On March 31, 2025, the Court granted Defendants' motion to dismiss the FAC. The Court held that none of the challenged statements was actionable, because each was either not misleading, not material, a non-actionable opinion, or a forward-looking statement. For example, the Court held that statements describing the "purposes and goals of Discover's compliance program" were "[v]ague and aspirational" statements that "no reasonable investor would interpret" as "assurances." Op. at 9. The Court also held that a statement that Discover "invested significantly" to "strengthen compliance" was "vague and optimistic," and no reasonable investor would interpret it "to mean that [Discover's] compliance program was adequate." *Id*. at 31.

-4-

The Court also dismissed Plaintiffs' scheme liability claims under Rules 10b-5(a) and (c), finding "unpersuasive" Plaintiffs' theory that Defendants "underinvest[ed] in risk management and compliance" and pursued "aggressive" stock buybacks to "improper[ly] manipulat[e]" shares outstanding and earnings-per-share. *Id.* at 40-41. Because the FAC failed to plead a primary violation of the securities laws, the Court also dismissed Plaintiffs' Section 20(a) control person claims. *Id.* at 42. The Court allowed Plaintiffs to move for leave to amend but admonished that they should only if they "believe they can do so consistent with this opinion and Rule 11." *Id.*

### B.  Plaintiffs' Proposed Second Amended Complaint

Plaintiffs now seek leave to file the PSAC, which again asserts claims for securities fraud and scheme liability against Discover and the Officer Defendants (former CEO Roger Hochschild, and former CFOs John Greene and Mark Graf), as well as control person claims against each of the Officer Defendants and ten former members of Discover's Board (the "Director Defendants"). Most of the statements the PSAC challenges are the same as or nearly identical to statements that the Court already dismissed. Ex. 45 (statements 37-114). Plaintiffs challenge only a handful of new statements, and contrary to their assertion that the "facts have changed dramatically" since the FAC, Dkt. No. 108 ("Pls.' Br.") at 1-4, the "new" facts are limited to Discover's 2024 restatement of certain financials and its 2025 consent orders with the FDIC and Federal Reserve.

### 1.  Two Recent Developments Precipitating the PSAC

***Restated 2022 and 2023 Financials.*** In July 2023, when Discover first announced that it had incorrectly classified certain credit cards, Discover recorded "a liability of $365 million . . . to provide refunds to merchants and merchant acquirers." Ex. 61. That number reflected Discover's contemporaneous estimate of the liability, though Discover cautioned that it was "difficult to determine the final amount of potential refunds at this time" because of "differences in individual merchant agreements, changes in network terms, and availability of historical data." *Id.* Discover

also explained then and in subsequent filings that it was in ongoing discussions with its regulators, *id.*, which "may require refunds or other remediation . . . [of] an amount different than the Company's current estimate," Ex. 48 at 32; Ex. 49 at 34. In its 2023 10-K filed on February 23, 2024, Discover raised the restitution liability to $375 million, but again noted that discussions with regulators were "ongoing," and that the ultimate remediation cost could "differ[], possibly materially, from [Discover's] current estimate." Ex. 46 at 131. On February 19, 2024, Discover announced that it had entered into an agreement to be acquired by Capital One. PSAC ¶ 48. On May 1, 2024, Discover increased its liability estimate to "$1.2 billion" to reflect the amount it "now expects is probable to be disbursed in relation to the card product misclassification," based on its "experience to date with remediation efforts," "discussions . . . with its regulators," "the pending merger with Capital One . . . and a desire to advance resolution of the matter more quickly to mitigate further risk." Ex. 50 at 29.

On November 25, 2024, Discover announced that it planned to file, and on December 23, 2024, did file, amended versions of its 2023 10-K, and its Q1 and Q2 2024 10-Qs, to restate certain financial information for the years 2022 and 2023. *See* Exs. 47, 51. The restatement followed technical discussions between Discover, SEC staff, and Discover's independent auditor, Deloitte, in connection with the SEC's review of the registration statement for the then-pending merger. *See* Ex. 47. SEC staff "indicated that it disagree[d] with [Discover's] application of revenue recognition guidance" under the Accounting Standards Codification ("ASC") to record the $365 million "Initial Liability" for the card misclassification issue in June 2023. Ex. 51; *see also* Ex. 47. Discover had applied an "expected settlement approach," Ex. 57 at 2, that "measur[ed] the restitution liability estimate under ASC 450-20 rather than as a refund obligation" under ASC Topics 605 and 606, and applied a "net" rather than "gross" overcharge estimation methodology,

Ex. 55 at 1-3 & n.2.[2]  After months of discussions, and in light of the "challenges given data and informational limitations in deriving a reasonable estimate" of the effect on historical revenue, the staff indicated it would not object to an "Alternative Approach" in which Discover "estimate[d] the revenue error based on the amount of restitution that the Company has agreed to pay [in settlements] to merchants and acquirers . . . [excluding] interest and reimbursements for plaintiffs' legal costs."  Ex. 56 at 1; *see* Ex. 47.  Applying that Alternative Approach, Discover restated the historical revenue error as $1.047 billion as of December 2023, which was reclassified as "a refund liability consistent with ASC 606-10-32-10."  Ex. 56 at 1; Ex. 47 at Explanatory Note.  Discover's restated financials noted that "[i]n quantifying the historical revenue error and associated card product misclassification refund liability," it had previously "selected a methodology which the [SEC] Staff believed to be, and the Company ultimately accepted as, a misapplication of" generally accepted accounting principles ("GAAP").  PSAC ¶ 8 (alterations in original).

***FDIC and Federal Reserve Consent Orders.***  In April 2025, Discover entered into an amended consent order with the FDIC.  *Id.* ¶ 11.  The order—which amended an existing consent order already considered by the Court, *see* FAC ¶ 160-61; Op. at 3, 36—required Discover to pay $1.225 billion in restitution to merchants, Pls.' Br. at 2, in line with (not in addition to) the remediation liability estimate Discover had disclosed nearly a year earlier.  Ex. 50 at 29 ("$1.2 billion" liability announced in May 2024); *see supra* p. 6.  Also in April 2025, Discover entered into a consent order with the Federal Reserve Board, which asserted that unspecified "senior executives of [Discover] were aware that numerous Discover consumer credit cards were improperly classified as 'commercial' credit cards and were therefore assessed a higher

---

[2] ASC Topic 450-20 provides accounting guidance on "loss contingencies," including for "[p]ending or threatened litigation."  Ex. 52.  ASC Topics 605 and 606, on the other hand, provide guidance on "revenue recognition" and "revenue from contracts with customers," respectively.  Exs. 53, 54.

interchange fee," but unspecified "senior management failed to take adequate steps to correct" the issue. PSAC ¶ 11 (alteration in original). The order did not name any particular executive or member of senior management nor otherwise include any information on this point.

Plaintiffs do not allege that any of these events constitute a "corrective disclosure," nor do Plaintiffs extend the proposed class period to include these events.

### 2. Plaintiffs' Amended Allegations

As reflected in the table below and Exhibit 45, the PSAC challenges four categories of statements—two new ones and two recycled from the FAC. For the new categories, Plaintiffs (1) seize on Discover's announcement in 2024 that it was restating certain financials from 2022 and 2023 to claim that the originally-issued financials were fraudulent, and (2) challenge the unremarkable statement that a contractually-defined fee amount typically applies to credit card transactions.[3] For the two recycled categories, Plaintiffs challenge (3) general and aspirational statements related to compliance and risk management, all of which the Court already addressed, and (4) SOX certifications, each of which was already addressed or is nearly identical to a previously-addressed statement.

| | Category | Previously Dismissed? | Examples |
|---|---|---|---|
| 1. | Restated 2022 and 2023 Financials (Statement Nos. 1-31) | No | "Unaudited condensed consolidated statements of financial condition as of March 31, 2023, June 30, 2023, and September 30, 2023." PSAC ¶ 192(a). "The accompanying consolidated financial statements have been prepared in accordance with [GAAP]." *Id.* ¶ 202. |
| 2. | Definitional Transaction Fee | No | "Contractually defined per-transaction fee amounts typically apply to each type of transaction processed |

---

[3] The new challenged statement about the contractually-defined fee amount is the only new challenged statement Plaintiffs attribute to Defendant Graf. Further, because the restated financials cover the 2022-2023 period, none of the claims based on those statements apply to Defendant Graf, who retired from Discover in 2019. *See* PSAC ¶¶ 191-94, 204.

| | Category | Previously Dismissed? | Examples |
|---|---|---|---|
| | Statement (Statement Nos. 32-36) | | and are recognized as revenue at the time each transaction is captured for settlement." *Id.* ¶ 208. |
| 3. | Compliance and Risk Management Statements (Statement Nos. 37-60) | Yes | "Our enterprise risk management principles are executed through a risk management framework that is based upon industry standards for managing risk and controls." *Id.* ¶ 217(c).<br><br>"The Company complies with both the letter and the spirit of fair and responsible banking laws." *Id.* ¶ 222. |
| 4. | SOX Certifications and Related Statements (Statement Nos. 61-114) | Yes | "Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact . . . ." *Id.* ¶ 206.<br><br>"[I] [d]esigned such internal control over financial reporting . . . to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements . . . in accordance with [GAAP]." *Id.* ¶ 210. |

## ARGUMENT

Although Rule 15(a)(2) "directs courts to 'freely give leave [to amend] when justice so requires,' courts may deny a proposed amended pleading if the amendment would be futile." *Int'l Union of Operating Eng'rs, Loc. 139, AFL-CIO* v. *Daley*, 983 F.3d 287, 296 (7th Cir. 2020) (alteration in original). Because the PSAC fails to state a claim that satisfies the heightened pleading standards of Rule 9(b) and the PSLRA, Plaintiffs' motion for leave to amend and file the PSAC should be denied.

I. **THE PSAC IS FUTILE BECAUSE IT STILL FAILS TO PLEAD WITH PARTICULARITY A CLAIM FOR SECURITIES FRAUD.**

A. **Plaintiffs Fail to Plead with Particularity a Claim Based on Any New Challenged Statements.**

1. **Plaintiffs Fail to Plead Loss Causation and Scienter for the Newly Challenged Statements Related to the Restated Financials.**

The first category of newly challenged statements in the PSAC is financial information for

-9-

the years 2022-2023 that Discover restated in December 2024. Ex. 45 (statements 1-31); PSAC ¶¶ 191-94, 202-03. Plaintiffs' proposed amendment to add these claims is futile for at least two reasons. *First*, Plaintiffs fail to plead loss causation because they have not alleged that any of the alleged disclosure events corrected these statements. Rather, to the extent these statements were "corrected," that correction occurred months after the end of the class period and the last alleged corrective disclosure (and therefore months after the last alleged stock price drop). *Second*, Plaintiffs fail to adequately plead a strong inference of scienter.

### a. Loss Causation

To plead loss causation, Plaintiffs must allege "both that the defendants' alleged misrepresentations artificially inflated the price of the stock and that the value of the stock declined once the market learned of the deception" through a corrective disclosure. *Ray* v. *Citigroup Glob. Markets, Inc.*, 482 F.3d 991, 995 (7th Cir. 2007). Where a purported disclosure does not "reveal any 'relevant truth' about [a] purported fraud," it does "not qualify as 'corrective' and cannot establish loss causation." *Janbay* v. *Canadian Solar, Inc.*, 2012 WL 1080306, at *15 (S.D.N.Y. Mar. 30, 2012) (quotation omitted).

Here, Plaintiffs have not alleged that they suffered loss caused by the allegedly misstated financials. That is, Plaintiffs do not allege a stock drop when the "truth" about the financial statements was publicly disclosed—*i.e.*, when the financials were restated. Specifically, Plaintiffs assert that more than three months after the end of the proposed class period, on May 1, 2024, Discover reported that it increased its reserve liability estimate from $375 million to $1.2 billion. PSAC ¶ 171; *see supra* p. 6. Later, on November 25, 2024, Discover announced that it would "restate[]" certain 2022 and 2023 financials, and that the existing financials "should no longer be relied upon." Ex. 51; PSAC ¶ 198. Discover then filed its restated financials on December 23, 2024. *See* Ex. 47; PSAC ¶ 191. However, the PSAC does not allege that Discover's stock price

-10-

dropped—causing Plaintiffs to suffer loss—in response to *any* of those announcements.

Plaintiffs re-allege the exact same five corrective disclosures from the FAC, all of which pre-date the restatement:

| Date | Alleged Corrective Disclosure |
|---|---|
| July 20, 2022 | Disclosure of internal investigation and suspension of Discover's share repurchase program (PSAC ¶¶ 353-61) |
| July 19-20, 2023 | Disclosure of card misclassification issue, proposed FDIC consent order, and another share buyback suspension (*Id.* ¶¶ 362-65) |
| August 14, 2023 | Hochschild's resignation (*Id.* ¶¶ 366-72) |
| October 18-19, 2023 | Ongoing compliance review and continuation of share buyback suspension (*Id.* ¶¶ 373-77) |
| January 17-18, 2024 | Increased expenses primarily due to investments in compliance and risk management as well as customer remediation (*Id.* ¶¶ 378-83) |

None of these alleged corrective disclosures "reveal any 'relevant truth'" about the challenged revenue figures, liability estimates, or GAAP compliance statements, and therefore "cannot establish loss causation." *Janbay*, 2012 WL 1080306, at *15 (quotation omitted).

### b. Scienter

Plaintiffs' theory that Defendants *must have known* that Discover's financial statements were materially misleading, given the subsequent restatement, also falls well short of the PSLRA's heightened pleading standard, as "Plaintiffs cannot rely on a 'must have known' theory." *In re Bally Total Fitness Sec. Litig.*, 2006 WL 3714708, at *9 (N.D. Ill. July 12, 2006).

*First*, Plaintiffs assert that "Discover's restatement of previously issued financial results due to the Card Misclassification Scheme," as well as its acknowledgement of its "misapplication of GAAP," are indicative of scienter. PSAC ¶¶ 300-01. It is well established that a restatement standing alone is not indicative of fraud. *See, e.g., Davis* v. *SPSS, Inc.*, 385 F. Supp. 2d 697, 713 (N.D. Ill. 2005) ("[R]estatements . . . provide[] no assistance in determining the intent behind the misstatements."); *City of Brockton Ret. Sys.* v. *Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 472 (S.D.N.Y. 2008) ("[The] mere fact of a restatement . . . does not support a strong or even weak inference of

scienter."). Instead, "[t]here must also be other allegations . . . that together will support a strong inference of scienter. Otherwise such allegations amount to pleading fraud by hindsight." *Roth* v. *OfficeMax, Inc.*, 527 F. Supp. 2d 791, 798 (N.D. Ill. 2007).

Plaintiffs' assertion that "other indicia of fraud are present," PSAC ¶ 301, relies entirely on fraud by hindsight. For example, Plaintiffs allege that the restatement "was in connection with a more than 15-year-long practice" of card misclassification, which "Discover has admitted was improper and regulators have found violated the law," and that the subsequently-restated 2022-2023 revenue figures "resulted from admitted material weakness in Discover's ICFR." *Id.* ¶¶ 301-02. Nothing in those allegations pleads with particularity that Defendants knew *at the time* that internal controls were not working as designed or that Defendants acted with fraudulent intent. *See In re Turquoise Hill Resources Ltd. Sec. Litig.,* 2014 WL 7176187 at *6 (S.D.N.Y. Dec. 16, 2014) ("[A]lthough a restatement inherently acknowledges an error in a company's financial statements, the Complaint's allegations do not support an inference that this error was intentional or that Defendants . . . were even aware of it until steps to review and ultimately correct it began."). "An allegation that defendants should have known about internal control deficiencies based on nothing more than later acknowledgment of such weaknesses amounts to pleading fraud by hindsight." *Roth*, 527 F. Supp. 2d at 801.[4]

*Second*, Plaintiffs contend that scienter is supported by Discover's admission that "[i]n quantifying the historical revenue error and associated card product misclassification refund liability, [Discover] selected a methodology which the [SEC] Staff believed to be, and [Discover]

---

[4] Indeed, there is nothing in the restatement that suggests that the Individual Defendants were aware of the errors in the financial statements at the time they were made, let alone that they acted with scienter. Plaintiffs therefore fail to plead corporate scienter as to Discover as well. *See Pugh* v. *Trib. Co.*, 521 F.3d 686, 697 (7th Cir. 2008) ("[T]he corporate scienter inquiry must focus on 'the state of mind of the individual corporate official or officials . . . rather than generally to the collective knowledge of all the corporation's officers and employees . . . .'") (quotation omitted).

ultimately accepted as, a misapplication of GAAP." PSAC ¶ 300(c). But this disagreement between Discover and the SEC staff over the application of technical provisions of GAAP—resolved after months of discussion with Discover ultimately agreeing to follow the staff's preferred interpretation of the accounting standards—is hardly indicative of scienter. *See Bally*, 2006 WL 3714708, at *10 ("Allegations that GAAP or Bally's internal accounting policies were violated do not establish that the misstatements were made with the requisite intent.").

While Plaintiffs concede that "GAAP violations might not, standing alone, suggest fraud," PSAC ¶ 300(c), they argue such violations support scienter where they did not "involve complex accounting standards or require the exercise of judgment." Pls.' Br. at 16 (quoting *Chow* v. *Archer-Daniels-Midland Co.*, 2025 WL 790854, at *4 (N.D. Ill. Mar. 12, 2025)). Plaintiffs argue that Discover's admitted "misapplication of GAAP" supports scienter because the issue "was not particularly complicated and did not turn on matters of judgment." *Id.* at 2, 16. But this conflates the underlying misclassification issue with the disagreement in late 2024 between the SEC staff and Discover regarding technical accounting rules for recording the historical revenue error *after Discover had already disclosed the card misclassification issue and the $1.2 billion liability*. Specifically, the disagreement centered on whether the error should be recorded as a "restitution liability estimate under ASC 450-20" (which deals with contingent liability for litigation), or treated as a "refund obligation under ASC Topic 606," and whether the restitution plan liability should be estimated using a "net overcharge" or "gross overcharge" methodology. Ex. 55 at 1-3 & n.2; *see supra* pp. 6-7. This dispute largely amounted to form over substance, as months earlier Discover had already raised its estimate of the restitution liability amount from $375 million to $1.2 billion, with the only remaining question being how to record that historical liability.

Although Discover ultimately agreed to apply an "Alternative Approach" that utilized the

"maximum amount agreed to be paid by [Discover] in restitution" as a proxy for the revenue error, Ex. 47 at Explanatory Note, that does not mean that the initial approach applied by Discover in consultation with its independent auditor, Deloitte, was made in bad faith or was so unreasonable as to be reckless, particularly in light of the "challenges given data and informational limitations in deriving a reasonable estimate of what revenue would have been in the historical periods." Ex. 56 at 1. These accounting rules "are complex and technical" and Plaintiffs have failed to allege with particularity why or how Defendants "would have been so familiar with those rules so as to see a problem in the company's accounting before their auditors did." *Pension Tr. Fund for Operating Eng'rs* v. *Kohl's Corp.*, 266 F. Supp. 3d 1154, 1167-68 (E.D. Wis. 2017), *aff'd*, 895 F.3d 933 (7th Cir. 2018). Indeed, courts have recognized that ASC 606 in particular is not "straightforward or 'unequivocal'"—the "application of [ASC] 606 . . . requires significant judgment, estimation and disclosures." *Toft* v. *Harbor Diversified Inc.,* 2025 WL 357776, at *7 (E.D. Wis. Jan. 31, 2025) (quotation omitted) (alteration in original); *see also In re Allscripts Inc. Sec. Litig.*, 2001 WL 743411, at *11 (N.D. Ill. June 29, 2001) ("[I]t is difficult to build inferences of scienter upon accounting errors because such errors often involve complex calculations about which reasonable people can differ in opinion.").

*Third*, Plaintiffs purport to plead scienter based on the Federal Reserve's assertion that unnamed "senior executives of [Discover] were aware that numerous Discover consumer credit cards were improperly classified" and "despite this awareness, DFS's senior management failed to take adequate steps to correct the Firm's Discover Card Interchange Fee Practices." PSAC ¶ 11 (alteration in original). As Plaintiffs concede, the Federal Reserve's consent order did not identify those senior executives. Pls.' Br. at 5. Plaintiffs argue that "it does not require a large inferential leap to conclude that Hochschild" had awareness because "the Discover board saw fit to remove

-14-

[him] in 2023." *Id.* But such speculation and inferences do not amount to the particularized *facts* required to meet the heightened pleading standard under Rule 9(b) and the PSLRA. In any event, Plaintiffs also do not explain how general awareness of the card misclassification issue would signify awareness of the specific accounting rules and other nuances that led to the restatement, let alone that Hochschild knew that GAAP had been misapplied.[5]

Further, the Federal Reserve's assertion is "not scienter-based" as "[t]here are additional available explanations for the violations . . . which do not necessarily rise to the level of intentional fraud, such as systems problems or negligence." *Last Atlantis Cap. LLC* v. *AGS Specialist Partners*, 533 F. Supp. 2d 828, 831-32 (N.D. Ill. 2008) (no inference of scienter for unnamed defendants in a consent order given "the absence of specific regulatory findings against the . . . defendants"); *Buhrke Fam. Revocable Tr.* v. *U.S. Bancorp*, 726 F. Supp. 3d 315, 360-61 (S.D.N.Y. 2024) (regulator's findings not enough to infer scienter because it was not "clear what standard of proof or knowledge the [regulator] relied on" or "who at [the bank] supposedly knew what and when"); *In re Ocwen Fin. Corp. Sec. Litig.*, 2015 WL 12780960, at *9 (S.D. Fla. Sept. 4, 2015) (declining to infer scienter based on consent order finding "regulatory failings, for which scienter is not an element"). These findings therefore do not support a strong inference of scienter.

### 2. Plaintiffs Fail to Plead with Particularity that the Transaction Fee Statement Was False or Misleading or Made with Scienter.

The only other new challenged statement in the PSAC—which also fails—is the statement

---

[5] Plaintiffs baldly state that "[i]t is *likewise reasonable to infer*" scienter for Graf and Greene based on their position as CFO, Pls.' Br. at 5-6 (emphasis added), which is plainly insufficient to establish a strong inference of scienter. The PSAC contains no allegations that these CFOs are specifically included in the reference to unnamed senior executives, and no allegations that they had any responsibility for, or specialized knowledge regarding, Discover's compliance function, which Plaintiffs acknowledge reports up to the CRO, not the CFO. PSAC ¶ 80. Moreover, Graf had left Discover years before the 2022-2023 financial statements. At most, the PSAC's allegations amount to impermissible group pleading. *See Cornielsen* v. *Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 601-02 (7th Cir. 2019).

in Discover's 10-Ks that "[c]ontractually defined per-transaction fee amounts typically apply to each type of transaction processed and are recognized as revenue at the time each transaction is captured for settlement." Ex. 45 (statements 32-36); PSAC ¶ 208 (alteration in original).

*First*, this statement, which is included in a section of the 10-K titled "Significant Revenue Recognition Accounting Policies," *see, e.g.*, Ex. 66 at 90-91, makes no representations about whether the transaction fee amounts that Discover assessed and collected were always the right ones. Rather, the statement merely describes the structure of one of Discover's revenue streams and Discover's policy for when that revenue is recognized for accounting purposes, neither of which Plaintiffs contest. Moreover, Plaintiffs allege no particularized facts showing that Discover did not "typically apply" a contractual, per-transaction fee for acceptance of its cards. In any event, no reasonable investor would read this statement of a revenue recognition policy as an assurance that those fees were always correctly applied.

Plaintiffs argue that Defendants "assumed a duty to disclose" the misclassification "[b]ecause [they] chose to discuss the basis for interchange fees in Discover's public filings." Pls.' Br. at 11. But the Court rejected similar arguments in its March 2025 decision, holding that there is no "duty to disclose" where (as here) the challenged statement is not misleading. *See, e.g.*, Op. at 24 ("Because Greene's statement [that 'we got that behind us'] was not misleading, he had no duty to disclose information about Discover's compliance position.").

*Second*, Plaintiffs also fail to plead with particularity a strong inference of scienter for this statement for the same reasons as the others. *See supra* Part I.A.1.b; *infra* Parts I.B.1.b, I.B.2.b.

**B.     Plaintiffs' Attempts to Challenge Previously-Dismissed Statements Still Fail.**

**1.     Plaintiffs Still Fail to Plead any False or Misleading Statements or Scienter Based on Compliance and Risk Management Statements.**

Plaintiffs reassert previously-dismissed claims based on numerous general and aspirational

statements that they assert misled investors regarding Discover's compliance and risk management capabilities and investments. For many of the recycled compliance statements (those in Section VII.B of the PSAC), Plaintiffs allege no new supporting facts, but instead state they were included "primarily to preserve their appellate rights," PSAC at 83 n.140; Ex. 45 (statements 37-43). This is "unnecessary and improper." *Parrott* v. *Fam. Dollar, Inc.*, 2020 WL 1888927, at *1 (N.D. Ill. Apr. 16, 2020). Indeed, "dismissed claims need not be included in an amended complaint," and if this rule is "not heeded sanctions may indeed follow." *Smith* v. *Nat'l Health Care Servs. of Peoria*, 934 F.2d 95, 98-99 (7th Cir. 1991). This is because "[r]equiring the continual repetition of spurned arguments would not be useful" and "would impose an unnecessary and annoying burden on parties and district courts." *Ward*, 901 F.3d at 881-82. In any event, because a motion to amend "is not a vehicle . . . to seek reconsideration of a Court's holding," *Lightfoot* v. *Union Carbide Corp.*, 1997 WL 752357, at *3 n.2 (S.D.N.Y. Dec. 2, 1997), *aff'd*, 175 F.3d 1008 (2d. Cir. 1999), amendment should be denied.

Plaintiffs' renewed challenge to the remaining previously-dismissed compliance statements—those in PSAC Section VI.B, including the statements that Discover "complies with" the law and has a risk management framework "based upon industry standards"—fares no better. PSAC ¶¶ 217, 222; *see also* Ex. 45 (statements 44-60). Plaintiffs now purport to plead falsity and scienter by citing compliance defects and legal violations asserted in the 2025 consent orders. PSAC ¶¶ 218-20, 223-26. *First*, Plaintiffs have failed to show falsity because the Court's dismissal did not depend on whether Plaintiffs had adequately pled such defects, but on the fact that no reasonable investor would view these statements as "concrete assurances." Op. at 8-13, 32-35. *Second*, these claims fail for the independent reason that Plaintiffs do not plead with particularity a strong inference of scienter.

a.      **None of the New Facts Should Change the Court's Conclusion that the Compliance Statements Were Not Concrete Assurances.**

The PSAC again challenges statements in Discover's 10-Ks that its compliance department "sets risk management standards . . . that are consistent with the size and complexity of [its] business, industry practices and applicable legal and regulatory requirements," that Discover's "risk governance framework is implemented such that bank-level risk governance requirements are satisfied as well," and that its "risk management framework . . . is based upon industry standards." PSAC ¶ 217. The Court held that the statement about "set[ting] risk management standards," when "read in context," simply "provides a basic description of . . . [the compliance] department's role" and was not a "concrete assurance" that "Discover has complied with all (or any) of its legal obligations." Op. at 8-10. The Court similarly held that "no reasonable investor" would interpret the statement about "bank-level risk governance requirements [being] satisfied" as an "assurance" that Discover's compliance framework was "properly functioning." *Id.* at 11. Nothing in the PSAC leads to a different conclusion.

Plaintiffs argue that these statements are misleading in light of findings in the FDIC consent order that Discover did not have internal controls "appropriate to the size of the Bank and the nature, scope and risk of its activities," and in the Federal Reserve consent order that Discover "did not have any policies . . . to ensure that credit cards were properly classified." PSAC ¶ 218. As an initial matter, that FDIC finding is not new. Although the FDIC issued an amended consent order in 2025, the finding that Plaintiffs cite is from the 2023 version of the order, and was included in the FAC. FAC ¶ 161. In any event, these findings are irrelevant to the Court's decision that no reasonable investor would interpret the challenged statements as assurances of compliance, which does not depend on whether Discover in fact had adequate controls or faced compliance issues.

Similarly, the PSAC again challenges statements from Discover's Code of Conduct that it

-18-

"complies with both the letter and spirit of . . . banking laws" and "complies with federal and state" unfair trade practices laws. PSAC ¶ 222. The Court previously rejected this theory, explaining that "[n]o reasonable investor" would interpret those statements as a "concrete assertion about the effectiveness of Discover's compliance program." Op. 32-35. Plaintiffs' reliance on consent order findings that Discover violated the law, PSAC ¶¶ 223-24, is no reason to revisit the Court's dismissal, which again did not depend on whether Discover faced compliance issues.[6]

### b. Plaintiffs Fail to Plead with Particularity a Strong Inference of Scienter for the Compliance and Risk Management Statements.

To plead a strong inference of scienter, Plaintiffs must allege particularized facts (i) "showing that the defendants had both the motive and opportunity to commit fraud," or (ii) "presenting strong circumstantial evidence of conscious misbehavior or recklessness." *In re CBOE Volatility Index Manip. Antitrust Litig.*, 435 F. Supp. 3d 845, 861 (N.D. Ill. 2020), *aff'd*, 42 F.4th 619 (7th Cir. 2022). Defendants must have "had the requisite scienter at the time that they made each allegedly fraudulent statement," *In re NeoPharm, Inc. Sec. Litig.*, 2007 WL 625533, at *6 (N.D. Ill. Feb. 23, 2007), which must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). The Court did not previously address scienter, but it provides an independent basis on which to find that Plaintiffs' proposed amendment is futile.

### i. Generic Allegations of Motive and Opportunity Are Insufficient.

To plead scienter based on "motive and opportunity," Plaintiffs must allege particularized facts that each Defendant had both the motive ("concrete benefits that could be realized by" the

---

[6] The only other allegations cited in support of Plaintiffs' challenge of these statements are the purported former employee allegations, and a purported admission by Hochschild, regarding deficiencies in Discover's compliance program, all of which are recycled from the FAC, and have no bearing on the Court's analysis and dismissal of these statements. PSAC ¶¶ 218-20, 223-26.

alleged fraud) *and* opportunity ("the means and likely prospect" of achieving the fraud). *Scheiner* v. *Midas, Inc.*, 2013 WL 329006, at *8 (N.D. Ill. Jan. 29, 2013). Plaintiffs allege that Defendants were incentivized to increase Discover's earnings per share and stock price through "aggressive" stock repurchases, because "Hochschild's and other [*unspecified*] executives'" compensation was tied to those metrics. PSAC ¶ 398; *see id.* ¶¶ 19(b), 316-20, 399-403. But such compensation-based allegations are "too common among corporations and their officers to be considered evidence of scienter." *See Heavy & Gen. Laborers' Loc. 472 & 172 Pension & Annuity Funds* v. *Fifth Third Bancorp*, 2022 WL 1642221, at *23 (N.D. Ill. May 24, 2022) (quotation omitted).

### ii. Speculation of Reckless or Conscious Misconduct Is Insufficient.

Plaintiffs next attempt to plead scienter based on conscious misbehavior or recklessness, but the strength of these "allegations must be correspondingly greater than the allegations used to support 'motive and opportunity.'" *Rehm* v. *Eagle Fin. Corp.*, 954 F. Supp. 1246, 1255 (N.D. Ill. 1997) (quotation omitted). Plaintiffs must plead particularized facts showing that each Defendant's conduct in making the challenged statements was "an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or was so obvious that the defendant must have been aware of it." *Antelis* v. *Freeman*, 799 F. Supp. 2d 854, 865 (N.D. Ill. 2011). Asserting that a defendant "should have known about fraud is not enough." *CBOE*, 435 F. Supp. 3d at 861.

*2025 Consent Orders.* Plaintiffs point to the Federal Reserve's 2025 consent order, which asserted that unnamed "senior executives of [Discover] were aware" of the card misclassification and "despite this awareness, [Discover's] senior management failed to take adequate steps to correct [Discover's] Discover Card Interchange Fee Practices." PSAC ¶ 299(a) (alterations in original). But such an assertion by a regulator is insufficient to support a finding of scienter where "it is not clear what standard of proof or knowledge [the regulator] relied on" or "who at [the

company] supposedly knew what and when." *Buhrke*, 726 F. Supp. 3d at 361. The Federal Reserve's order did not provide any particularized *facts* supporting its assertions, did not articulate the standard of knowledge applied, and did not even specify whether any (and if so, which) of the Officer Defendants had such awareness. In fact, the order did not mention any of the Officer Defendants by name. Moreover, the order itself expressly noted that it was being issued "*before the . . . taking of any testimony or adjudication of or finding on any issues of fact or law herein.*" Ex. 60 at 5 (emphasis added). Given the "absence of specific regulatory findings" against any of the Defendants, this consent order cannot support a finding of scienter. *Last Atlantis*, 533 F. Supp. 2d. at 831 (no scienter for defendants not "specifically implicate[d]" by consent order).

Plaintiffs' reliance on the FDIC's 2025 consent order fares no better. Although the FDIC found that Discover "violated governing law in misclassifying credit card accounts," PSAC ¶ 299(d), the FDIC never found (and Plaintiffs do not claim the FDIC found) that such violations were reckless. Instead, Plaintiffs point to the FDIC's finding that Discover was "reckless[]" in "failing to establish and maintain a [compliance management system] providing for compliance with all applicable *consumer protection laws*." *Id.* (emphasis added). But these findings regarding consumer protection have nothing to do with *card misclassification*, which is central to Plaintiffs' theory that the challenged statements were misleading.[7] *See* Ex. 59 at 1-2 (card misclassification "resulted in the overcharging of *merchants, merchant acquirers, and other intermediaries*") (emphasis added). In any event, the post-hoc determination that Discover was reckless in connection with its compliance management system does not equate to contemporaneous recklessness in making the challenged statements. And, like the Federal Reserve consent order,

---

[7] While the PSAC also includes previously-dismissed claims based on "CMS and control deficiencies . . . relating to student loan servicing"—which does implicate consumer protection laws—Plaintiffs concede there is no basis for revisiting the dismissal of those claims. PSAC at 83 & n.140.

the FDIC consent order did not say anything about any of the Officer Defendants. The FDIC's findings therefore also do not support a strong inference of scienter.[8]

***Hochschild Departure.*** Plaintiffs again attempt to plead scienter by citing Hochschild's resignation, Pls.' Br. at 19-20, but still fail to explain how "an individual's resignation from a company is sufficient to create an inference—much less a strong one—of scienter as to that individual" (let alone as to anyone else). *Roth*, 527 F. Supp. 2d at 803 n.14. "[T]here are any number of reasons that an executive might resign, most of which are not related to fraud." *Das* v. *Rio Tinto Plc.*, 332 F. Supp. 3d 786, 815 (S.D.N.Y. 2018) (quotation omitted). For example, Plaintiffs do not address the more cogent explanation that a CEO's departure in the wake of compliance failures would follow from the company's belief that the "buck stops" with the CEO.[9]

Instead, the sole basis that Plaintiffs offer for drawing an adverse inference from Hochschild's resignation as CEO (none is alleged for Greene or Graf) is the statement in Discover's 2023 Form 10-K/A that "[a]s of December 31, 2023," Discover's efforts to "remediat[e]" its "commitment to integrity and ethical values in [its] control environment" included "appoint[ing] new individuals in key roles including the [CEO] and other leadership roles." PSAC ¶ 305; Ex. 47 at 161. However, Plaintiffs do not explain how the Board's choice of a new leader for the CEO position justifies an inference of scienter as to Hochschild.[10] As the

---

[8] The FDIC consent order's "neither admits or denies" clause also weighs against a finding of scienter. *Elec. Workers Pension Fund* v. *HP Inc.*, 2021 WL 4199273, at *6 (N.D. Cal. Sept. 15, 2021) (no scienter based on SEC order "stat[ing] defendants neither admitted nor denied the SEC's findings"); Ex. 59 at 1.

[9] Plaintiffs note that some "[c]ourts have recognized that the departure of a key executive involved in matters that form the basis of the alleged fraud supports a strong inference of scienter." Pls.' Br. at 20 (quoting *In re Inotiv, Inc. Sec. Litig.*, 2024 WL 1344784, at *28 (N.D. Ind. Mar. 29, 2024)). But *Inotiv* involved an executive who "played an *essential role* in the due diligence process" that would have alerted him to the alleged fraud. 2024 WL 1344784, at *28 (emphasis added). Here, by contrast, Plaintiffs do not allege with any particularity that the Officer Defendants had any "involv[ment]"—let alone an "essential role"—in card misclassification.

[10] Discover's statement that it "did not demonstrate an appropriate commitment to integrity and ethical

PSAC itself notes (in quoting a Morgan Stanley report), the more plausible inference is that "given the regulatory reviews of DFS currently [as of mid-2023] in motion, we would not be surprised if the Board [wa]s looking for a CEO with additional qualifications to address any potential regulatory/compliance issues." PSAC ¶ 368; *see In re Hertz Glob. Holdings Sec. Litig.*, 2017 WL 1536223, at *20-21 (D.N.J. Apr. 27, 2017), *aff'd*, 905 F.3d 106 (3d Cir. 2018) (resignations and terminations of company officers as part of remediating financial controls in connection with restatement did not suggest that officers knew of fraud; rather, it merely "suggest[ed] [the CFO] and . . . senior management who were on board during the relevant time are no longer there . . . [to] allay fears that the material weaknesses could persist"). Moreover, even after Hochschild stepped down as CEO in August 2023, Discover continued to employ him as an advisor to the Chair of the Discover Board of Directors for the remainder of the year. Ex. 67.[11]

---

values . . . in the approach to evaluating and addressing the card product misclassification," Pls.' Br. at 16, says nothing specifically about Hochschild or the other Individual Defendants and does not change the analysis. Thus, the circumstances here are a far cry from the cases cited by Plaintiffs (*id.* at 19-20). *See Fresno Cnty. Emps.' Ret. Ass'n* v. *comScore*, 268 F. Supp. 3d 526, 551-53 (S.D.N.Y. 2017) (Form 8-K admitted that "restatement of nonmonetary revenue was attributable to misconduct," and circumstances suggested that individual defendants "did not disclose information to the auditor to avoid detection"); *In re Sipex Corp. Sec. Litig.*, 2005 WL 3096178, at *1 (N.D. Cal. Nov. 17, 2005) (facts pled established, "in painful detail," that CEO had "personally orchestrated a sham 'sale'"); *In re Am. Serv. Grp. Inc.*, 2009 WL 1348163, at *49-50 (M.D. Tenn. Mar. 31, 2009) (individual defendants engaged in suspiciously timed insider trades after implementing improper cost control measures to inflate stock value).

[11] Plaintiffs' "core operations" argument also again fails to establish scienter. Pls.' Br. 22. The core operations inference "applies only where the operation in question constitute[s] nearly all of the company's business," and even then, "generally will not establish a strong inference of scienter by itself." *In re Baxter Int'l Inc. Sec. Litig.*, 2021 WL 100457, at *13 (N.D. Ill. Jan. 12, 2021) (quotation omitted). But here Plaintiffs allege no facts suggesting that the specifics of how credit cards are classified for purposes of calculating interchange fees is a core operation of the company. *See In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 628 (S.D.N.Y. 2005) ("[K]nowledge of the improper characterization of [certain] transactions" could not be attributed to CEO under the core operations inference because "plaintiffs allege no facts suggesting that the accounting treatment" of those transactions "was at the core of JPM Chase's business."). And to the extent Plaintiffs are claiming that the broad topics of compliance and risk management are core operations of Discover, it does not follow that an officer with general familiarity of those topics would have known of the card misclassification issue in particular or of any other specific compliance matter.

**2. Plaintiffs Still Fail to Plead with Particularity a Claim Based on the Previously-Dismissed SOX Certification Statements.**

**a. Plaintiffs Still Fail to Plead with Particularity that the SOX Certification Statements Were False or Misleading.**

Plaintiffs again assert that Defendants are liable for opinions regarding the truthfulness of Discover's financial reporting and disclosure controls in its 10-Qs and 10-Ks, which Plaintiffs allege were falsely certified pursuant to SOX. Ex. 45 (statements 61-114). But *all of these certifications* were either already dismissed, or are nearly identical to statements that were dismissed.[12] Specifically, the Court held that Plaintiffs failed to adequately allege that these SOX certifications were false, explaining that allegations about general compliance setbacks did not "relate[] to Discover's financial reporting or accounting practices" and "no reasonable investor would interpret the challenged certifications to convey concrete assurances about the adequacy of Discover's compliance program." Op. at 36-37. Nothing in the PSAC changes those conclusions.

*No contemporaneous falsity.* The PSAC does not allege particularized facts showing that these SOX certifications were false when made. *See* PSAC ¶¶ 205-06, 210-11. For example, Plaintiffs contend that Hochschild and Greene falsely represented in Discover's 2022 10-K that they "disclosed, based on [their] most recent evaluation of [ICFR], to [Discover's] auditors and the audit committee of [Discover's] board of directors . . . [a]ll significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting" and "[a]ny fraud, whether or not material, that involves management or other employees who have a

---

[12] The only arguably new SOX statement included in the PSAC is the statement, made in 2022-2023 financial statements, that "[t]he information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company," PSAC ¶ 205 (emphasis added) (alteration in original), which is substantially identical to one of the previously-dismissed SOX statements, *see* FAC ¶ 289 ("the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of [Discover] as of, and for, the periods presented in this report.") (alteration in original); Op. at 39 (dismissing all SOX allegations).

significant role in [Discover]'s internal control over financial reporting." *Id.* ¶ 211. However, Plaintiffs do not plead facts showing that, at the time of the certification, either Hochschild or Greene had concluded "based on [his] most recent evaluation" that there were in fact any deficiencies, material weaknesses, or fraud.[13]

Plaintiffs point to Discover's disclosure in its amended 2023 10-K that it had identified "material weaknesses" and "'concluded [it] did not maintain effective internal control over financial reporting' as of December 31, 2023." *Id.* ¶ 212. But the amended 2023 10-K makes clear that Discover's "CEO and CFO" only reached that conclusion "*[s]ubsequent* to the original evaluation." Ex. 47 at 160 (emphasis added). Because the statement was "based on [the Defendant's] most recent evaluation" and Plaintiffs do not adequately plead that the Officer Defendants had concluded at that time that there were deficiencies, Plaintiffs fail to plead particularized facts that this statement was false.[14] *See In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 469 (S.D.N.Y. 2018) ("To be actionable, a defendant's certification about the adequacy of internal controls must have been knowingly false at the time it was made.").[15]

---

[13] Plaintiffs' generalized allegations that Hochschild attended meetings or received reports regarding compliance issues (*see, e.g.*, PSAC ¶ 12) do not move the needle. *See Anderson* v. *Spirit Aerosystems Holdings*, 827 F.3d 1229, 1239-40 (10th Cir. 2016) (witness accounts of CEO's attendance at meetings where relevant reports were broadly discussed are too "generalized" to "support a scienter inference").

[14] Plaintiffs' reliance on *Hedick* v. *Kraft Heinz Co.*, 2021 WL 3566602 (N.D. Ill. Aug. 11, 2021), Pls.' Br. at 10-11, is misplaced. In *Kraft Heinz*, the plaintiffs alleged that "*despite knowing that the SEC was investigating* Kraft Heinz's accounting practices," the CEO and CFO allowed weak financial controls to "le[a]d to overstatements in the financial reporting." 2021 WL 3566602, at *7 (emphasis added). Based on those allegations, the court rejected the argument that the plaintiffs failed to plead that SOX certifications inaccurately reflected "the conclusions reached by the CEO and CFO" at the time of the certification. *Id.* Here, on the other hand, Plaintiffs do not plead that there was an SEC investigation at the time of the certifications. Nor do Plaintiffs plead particularized facts establishing that the Officer Defendants had concluded the controls were deficient based on their evaluation at the time of the certifications, or that the Officer Defendants were on notice of issues that would undermine their certifications.

[15] Because Plaintiffs' attempt to revive their challenge to the SOX certifications is based on admissions that Discover made for the first time in its amended 2023 10-K (filed in December 2024), which Plaintiffs do not allege was a "corrective disclosure," they also fail to plead loss causation. *See supra* Part I.A.1.a.

Plaintiffs also challenge the Officer Defendants' certification that they "*[d]esigned* such internal controls . . . to provide *reasonable assurance* regarding the reliability of financial reporting and the preparation of financial statements." PSAC ¶ 210 (emphasis added). Plaintiffs argue this certification was false because Discover admitted in its amended 2023 10-K that it "did not have controls designed or implemented" for one specific task: "to ensure that . . . cards were placed in appropriate . . . pricing tiers." *Id.* ¶ 213. But again, the amended 2023 10-K shows that the deficiencies with Discover's internal controls were identified "[s]ubsequent to the original evaluation." Ex. 47 at 160. And the fact that, in hindsight, Discover did not have controls to deal with one specific task does not mean that the Officer Defendants did not "design[]" the controls, which cover countless other tasks, to "provide reasonable assurance regarding the reliability of financial reporting." PSAC ¶ 210.

***Inactionable statements of opinion.*** The challenged SOX statements are also "statement[s] of opinion." *Fryman* v. *Atlas Fin. Holdings, Inc.*, 2022 WL 1136577, at *17 (N.D. Ill. Apr. 18, 2022); *see also* PSAC ¶¶ 205-06, 209-11 (reflecting that certifications were couched in opinion-based language such as "based on . . . recent evaluation," "[b]ased on my knowledge" and "the information . . . fairly represents"). "Because a statement of opinion admits the possibility of error, such a statement remains true—and thus is not an 'untrue statement of . . . fact'—even if the opinion turns out to be wrong." *Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 176 (2015) (citation omitted) (alteration in original). Plaintiffs fail to allege facts showing that the Officer Defendants did not believe the contents of their SOX certifications when made. Accordingly, their certifications are not actionable. *See City of Monroe Empls.' Ret. Sys.* v. *Hartford Fin. Servs. Grp.*, 2011 WL 4357368, at *14 (S.D.N.Y. Sept. 19, 2011) ("In cases alleging a false statement of opinion, the 'falsity and scienter

-26-

requirements are essentially identical.'[] This is so because a 'material misstatement of opinion is by its nature a false statement, not about the objective world, but about the defendant's own belief.'") (quotation omitted)); *Roofer's Pension Fund* v. *Papa*, 2018 WL 3601229, at *10 (D.N.J. July 27, 2018) (finding that statements relating to GAAP compliance were inactionable opinions given that "GAAP standards are often subjective" and "involve a range of possible treatments.").

> **b. Plaintiffs Fail to Plead with Particularity a Strong Inference of Scienter as to Defendants' SOX Certifications.**

Plaintiffs assert that the Officer Defendants' SOX certifications "indicate they knew about or recklessly disregarded the issues detailed in this Complaint." PSAC ¶ 310. But "signatures on SEC filings and certifications, without additional details supporting knowledge that the statements were false, 'add nothing substantial to the scienter calculus.'" *Fifth Third,* 2022 WL 1642221, at *22 (quotation omitted).

Plaintiffs offer conclusory assertions that the Officer Defendants had knowledge of material misstatements because "SOX required [them] to evaluate Discover's ICFR and perform [a sufficient] inquiry," they "repeatedly represented to investors that management, in fact, made such evaluations into the Company's ICFR," and "the magnitude, scope, and duration of [Discover]'s internal control failures described in [the PSAC] indicate scienter." PSAC ¶¶ 311, 313. But Plaintiffs "cannot allege 'fraud by hindsight,'" and the PSAC alleges no particularized facts establishing that Hochschild, Greene, or Graf were aware of any material misstatements *at the time they certified* information in SEC filings, including regarding the Company's financial condition, results of operations, and cashflows, and the design and effectiveness of its internal controls over financial reporting. *Toft*, 2025 WL 357776, at *8 (quoting *Higginbotham* v. *Baxter Int'l, Inc.*, 495 F.3d 753, 760 (7th Cir. 2007)); *see also supra* p. 12; PSAC ¶¶ 205-06, 210-11. Plaintiffs highlight that in December 2024, Discover acknowledged in its restated financials that

-27-

there had been material weaknesses in its internal controls because it "did not demonstrate an appropriate commitment to integrity and ethical values," and "did not have controls designed or implemented to ensure . . . credit cards were placed in appropriate" pricing tiers. PSAC ¶ 300(a)-(b). But Plaintiffs do not dispute that Discover had other internal controls in place for countless other topics. That Discover, with the benefit of hindsight, determined that it did not have a control in place to deal with one specific issue says nothing about the Officer Defendants' knowledge or awareness of specific deficiencies at the time the SOX certifications were signed.[16] The Federal Reserve's assertion that unnamed "senior executives . . . were aware" of the card misclassification issue, *id.* ¶ 181, does not save Plaintiffs' scienter theory because, as explained above, the consent order did not contain any particularized facts, *see supra* pp. 14-15, 20-22.

## II. THE PSAC STILL FAILS TO PLEAD WITH PARTICULARITY A CLAIM FOR SCHEME LIABILITY.

As the Court held, scheme liability does not apply here because Plaintiffs' claims are based on alleged misstatements and omissions alone. Op. at 40-41. But even putting that aside, the FAC "fail[ed] to allege any statements, omissions, or conduct to support a plausible scheme liability theory," *id.* at 42, and the allegations in the PSAC fail for the same reasons. *First*, the PSAC still does not plead with particularity "who played what role in the alleged scheme." *Desai* v. *Gen. Growth Props., Inc.*, 654 F. Supp. 2d 836, 862 (N.D. Ill. 2009). Instead, it asserts that the "Officer Defendants" carried out a "scheme" to inflate Discover's stock price by "causing Discover . . . to pursue an aggressive stock repurchase program" and "perpetrating the Card Misclassification Scheme" instead of making "critical investments" in compliance and risk management, and not

---

[16] Plaintiffs also argue that "the magnitude, scope, and duration of [Discover]'s internal control failures . . . indicate scienter." PSAC ¶ 313. But that conclusion is not supported by caselaw. *See Toft*, 2025 WL 357776, at *9 ("[I]nferring scienter by magnitude—like inferring scienter by duration—sounds of inference by hindsight and is therefore impermissible.").

"disclos[ing] the extent of [compliance and risk management] deficiencies." PSAC ¶¶ 398, 405-06. But Plaintiffs do not explain which Officer Defendant(s) even had authority to institute share repurchases or were involved in the so-called "Card Misclassification Scheme." The PSAC only vaguely states that "*senior executives of [Discover] were aware*" of card misclassification. *Id.* ¶ 181 (alteration in original). That is not enough for the reasons outlined above.

*Second*, Plaintiffs again attempt to support their scheme liability theory by alleging that Defendants deliberately underinvested in compliance so that Discover "could instead pursue an aggressive stock repurchase program" to inflate revenue and earnings-per-share and boost executive compensation. *Id.* ¶ 398. As the Court held, "Discover's business decision to prioritize investment in certain areas . . . does not amount to securities fraud," particularly since Discover's SEC filings "disclose the extent of its stock repurchases." Op. at 41.

## III. THE PSAC STILL FAILS TO PLEAD WITH PARTICULARITY A CLAIM FOR CONTROL PERSON LIABILITY.

Plaintiffs also still fail to plead with particularity that each Individual Defendant is liable as a "control person" under "Section 20(a) of the Exchange Act" as to the challenged statements. Pls.' Br. at 23-24; PSAC ¶¶ 410-26.[17] For starters, as the Court previously held, Plaintiffs "do[] not 'adequately plead a primary violation of securities laws'" for the reasons stated above so "plaintiffs' § 20(a) claims" also fail. Op. at 42 (quotation omitted).

In addition, as to the Director Defendants, the PSAC does not allege a single particularized fact regarding anything the Director Defendants actually did to control Discover's operations or financial reporting. Instead, the PSAC lumps together the Director Defendants and Officer Defendants to "presume," without any factual support, that "[t]he Individual Defendants, by virtue

---

[17] "Because section 20(a) claims sound in fraud, plaintiffs must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Kraft Heinz*, 2021 WL 3566602, at *17.

of their high-level positions within the Company, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company," and "were involved in drafting, producing, reviewing, approving, or disseminating" the challenged statements. PSAC ¶¶ 413-14. This group pleading "lack[s] the particularity required by Rule 9(b)," and therefore fails as a matter of law. *Cornielsen, LLC*, 916 F.3d at 600-01. Moreover, membership on a relevant "Committee, without more, does not suffice to allege that those directors were control persons." *In re Galena Biopharma Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1201 (D. Or. 2015). And Plaintiffs' assertion that control person liability "cannot be determined at the pleading stage," Pls.' Br. at 23 (quotation omitted), ignores that "[c]ourts within this District have consistently" dismissed claims "for control person liability [a]s improperly pleaded." *Desai*, 654 F. Supp. 2d at 863 (quotation omitted).

The conclusory allegations of control in the PSAC are also "contradicted by the incorporated documents." *Borusk* v. *Pierce*, 2023 WL 8764390, at *1 (W.D. Wisc. Dec. 19, 2023). For example, the Director Defendants did not sign any of the challenged SOX certifications. PSAC ¶ 210 & n.128; Exs. 3-7, 19-33. And the 2025 consent order with the Federal Reserve merely directs Discover's Board "to serve as a source of strength to Discover Bank." Ex. 60 at 5.

As to the Officer Defendants, Plaintiffs assert control person liability exclusively because each "was a senior executive." Pls.' Br. at 24. But "a plaintiff may not premise control person liability solely upon status within the company." *Desai*, 654 F. Supp. 2d at 863 (quotation omitted). At a minimum, Graf cannot be a control person for challenged statements made after he left Discover in September 2019, nor can Greene be a control person for the challenged statements made before he joined Discover in September 2019. PSAC ¶ 52.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Leave to Amend.

Dated: June 30, 2025

Respectfully submitted,

SULLIVAN & CROMWELL LLP

/s/ Christopher M. Viapiano

Christopher M. Viapiano
David N. Whalen
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
Facsimile: (202) 293-6330
viapianoc@sullcrom.com
whalend@sullcrom.com

Leonid Traps
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
trapsl@sullcrom.com

*Counsel for Discover Financial Services*

SIDLEY AUSTIN LLP

/s/ Hille Sheppard (with consent)

Hille Sheppard
Christopher Lee
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
hsheppard@sidley.com
chris.lee@sidley.com

*Counsel for R. Mark Graf*

-31-

GOODWIN PROCTER LLP

/s/ John Barker (with consent)

Deborah Birnbach
John Barker
100 Northern Avenue
Boston, Massachusetts 02210
Telephone: (617) 570-1000
DBirnbach@goodwinlaw.com
JBarker@goodwinlaw.com

*Counsel for John T. Greene*


WINSTON & STRAWN LLP

/s/ Seth Farber (with consent)

Seth Farber (admitted *pro hac vice*)
Thania ("Athanasia") Charmani (admitted
*pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6400
SFarber@winston.com
ACharmani@winston.com

Joseph Motto
35 W. Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-3728
JMotto@winston.com

*Counsel for Roger C. Hochschild*

-32-

-33-

WILLKIE FARR & GALLAGHER LLP

/s/ Todd G. Cosenza (with consent)

Todd G. Cosenza (admitted *pro hac vice*)
Charles D. Cording (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
Amanda M. Payne (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
tcosenza@willkie.com
ccording@willkie.com
jlevy@willkie.com
apayne@willkie.com

*Counsel for Mary K. Bush, Candace H.
Duncan, Joseph F. Eazor, Daniela O'Leary
Gill, Cynthia Glassman, Thomas G.
Maheras, Michael Moskow, John B. Owen,
David L. Rawlinson II, and Jennifer L.
Wong*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2025, I caused the foregoing Defendants' Opposition to Plaintiffs' Motion for Leave to Amend to be electronically filed via the Court's CM/ECF system, which effected service upon all counsel of record.

/s/ Christopher M. Viapiano
Christopher M. Viapiano
